IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

FELIX CHUCULATE, )
)
        Plaintiff, )
)
v. ) Case No. 13-CV-531-PJC
)
CAROLYN W. COLVIN, )
Acting Commissioner of the )
Social Security Administration, )
)
        Defendant. )

**OPINION AND ORDER**

Claimant, Felix Chuculate ("Chuculate"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Chuculate's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Chuculate appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Chuculate was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**

Chuculate was 50 years old at the time of the hearing before the ALJ on September 27, 2011. (R. 33). He completed eleventh grade and obtained a GED. *Id.* Chuculate testified that he had mowed lawns the summer before the hearing using a riding lawnmower. (R. 34-35).

Chuculate also said that he had worked as a day laborer for Cherokee Nations maintaining the grounds around the hospital, but he did not know the dates of his employment. (R. 37-38).

Chuculate testified that he smoked about one pack of cigarettes a day at the time of the hearing, which was reduced from his amount of smoking at the time of his double cardiac bypass surgery in May 2008. (R. 36).

Chuculate estimated that he could lift 15-20 pounds. (R. 41). He said that his left arm was weak, so he carried things with two hands. *Id.* He was not sure what the cause of his left arm weakness was, but he thought it might be from pain he had in his neck. *Id.* He said that his physicians were running tests to see what the cause was. *Id.* He said that his physicians were not recommending surgery on his neck, and he said that one of his doctors had told him that his heart would not tolerate any more surgery. (R. 43).

Chuculate thought that his heart seemed to be "pretty much okay," but he had occasional pain jolts that he did not think were "scary." (R. 42). He did not think he was having medication side effects. *Id.*

When asked how far he could walk, Chuculate said that he walked his dogs less than two blocks and then had to return home. (R. 43). He said that he had shortness of breath while walking, and he would become tired easily. (R. 48-49). He said it took him a while to stand up, but he did not have problems standing. (R. 43). He said that pain "all the way down" his neck and back made it difficult to walk or stand. (R. 44). He said that he was in pain at the time of the hearing. (R. 49-50). He said that he did not take pain medication except in the evening because it made him "loopy" and therefore it was not a good idea to drive. (R. 50). Chuculate thought he could sit for about 30 minutes. (R. 44).

Chuculate said that he had constant swelling in his legs. (R. 47). He said that "every once in a while" the swelling would be so extreme that his shoes would become tight. *Id.*

Chuculate said that he had always had asthma, and he used to be given an inhaler which helped. (R. 48). He said that he did not understand why his medical providers no longer gave him inhalers. *Id.* He said that it was hard to breathe "once in a while." *Id.* His wife had told him that he quit breathing at night. *Id.*

Chuculate had a driver's license, and he had driven to the hearing, which took him an hour. (R. 51). He thought that was about the farthest he had driven in the past year. (R. 52).

Chuculate received health care from the Salina Cherokee Nation Indian Clinic (the "Salina Clinic"), including home health care visits, in 2007-2011. (R. 364-500, 558-619, 627-84).

Chuculate had a left heart catheterization procedure on March 28, 2008 at Tahlequah City Hospital, and the impression was severe left main proximal stenosis with otherwise mild nonobstructive disease. (R. 217-20). A double vessel bypass was recommended. (R. 220).

George S. Cohlmia, M.D., completed a coronary artery bypass surgery on Chuculate on May 22, 2008. (R. 494).

Chuculate presented to the emergency room at the Tahlequah City Hospital on June 1, 2008 with chest tightness. (R. 900-10). He presented again the next day, was admitted, and was discharged June 4, 2008. (R. 849-99). Discharge diagnoses were coronary artery disease; status post coronary artery bypass grafting; atrial flutter; and tobaccoism. (R. 892).

Chuculate was hospitalized at Tahlequah City Hospital August 13-18, 2008, and his discharge diagnoses were left leg cellulitis; nonhealing wound in the left leg; tobacco use; septicemia; and diabetes. (R. 303, 763-848).

A home visit on September 9, 2008, from the Salina Clinic to check on Chuculate's left leg wound noted that Chuculate was noncompliant because he had quit taking insulin and checking his blood sugar. (R. 382).

Chuculate was hospitalized at Tahlequah City Hospital December 12-16, 2008, and his discharge diagnoses were upper respiratory infection; coronary artery disease, status post artery bypass graft; uncontrolled diabetes; and cigarette smoking. (R. 346-47, 692-762).

An echocardiogram completed on December 18, 2008 showed normal left ventricular size with preserved LV function, preserved systolic function, ejection fraction of 59%, mild interventricular septal hypokinesis, mild mitral and tricuspid regurgitation, mild-to-moderate pulmonary regurgitation, and mildly increased right ventricular systolic pressure. (R. 348).

Chuculate was seen by Colleen Springer, M.S.W., for mental health intake at the Salina Clinic on September 23, 2009. (R. 368). Chuculate reported that he was depressed because he could not pay his bills and due to a decline of his health. *Id.* Springer noted a flat affect, and she deferred a diagnosis. *Id.*

A January 8, 2010 echocardiogram reflected normal results for Chuculate's heart. (R. 512-13).

Chuculate was seen at the Salina Clinic on May 10, 2010, and he complained of pain on both sides of his neck, both shoulders, and down the middle of his back. (R. 576). On examination, Chuculate had tenderness to palpation from C7 to T5. *Id.*

Chuculate was hospitalized at Saint Francis Hospital May 30, 2010 through June 3, 2010. (R. 548-57). Discharge diagnoses were atrial flutter with rapid ventricular response and with chest pain; exacerbation of chronic obstructive pulmonary disease ("COPD"); acute bronchitis;

diabetes with elevated blood sugar levels on steroids; and bradycardia secondary to medication. (R. 553-54).

Chuculate was seen at the Salina Clinic on June 8, 2010, and he complained of back and neck pain. (R. 572). The hand-written notes regarding the examination appear to indicate that Chuculate had marked limitation and pain on range of motion of his neck. *Id.* Chuculate returned on July 29, 2010, complaining that his back pain had increased. (R. 560). Chuculate returned on August 6, 2010, and diagnoses were levoscoliosis; chronic back pain; and coronary artery disease. (R. 684).

On September 8, 2010, Chuculate returned to the Salina Clinic and requested a statement that he did not have any restrictions. (R. 680). The physician said that Chuculate should not lift more than 25 pounds due to his back pain. *Id.* William E. Dieker, M.D., wrote a note stating that Chuculate should not lift or carry more than 25 pounds. (R. 622).

An MRI of Chuculate's lumbar spine completed on September 14, 2010 showed no significant central canal or neural foraminal stenosis, with mild bilateral neural foraminal narrowing at L5/S1. (R. 690-91). An MRI of his thoracic spine completed the same day showed no significant central canal or neural foraminal stenosis, with degenerative scoliotic curvature. (R. 688).

Chuculate saw Springer for individual mental health treatment on October 26, 2010, and he complained that he needed medication for his depression, because he could not handle it. (R. 676). Springer found that Chuculate met the diagnostic criteria for major depressive disorder, recurrent, moderate. *Id.* A separate note indicated that the Salina Clinic prescribed fluoxetine to Chuculate that day. (R. 675). Another note that same day from the Salina Clinic indicated that

blood test results showed subtherapeutic levels of Chuculate's medications and that he said he had not taken his medications for two weeks. (R. 674).

On November 1, 2010, Chuculate presented to the Salina Clinic after falling and injuring his left shoulder and his eye. (R. 673). He returned on November 8, 2010 stating that he had severe back pain and that he needed medication refills. (R. 671). The hand-written notes appear to indicate that on examination Chuculate had marked spasms in his lower back and was walking with some difficulty. *Id.* Diagnoses included acute back spasms, and Chuculate was prescribed cyclobenzaprine and tramadol. *Id.*

At a routine check-up at the Salina Clinic on November 30, 2010, diagnoses included chronic depression. (R. 668). Noncompliance was noted because Chuculate was not taking all of his medications. *Id.*

X-rays of Chuculate's cervical spine completed April 20, 2011 showed severe degenerative changes with mild bilateral neural foraminal narrowing at C5/C6 and C6/C7; congenital fusion of C2/C3; and reversal of the cervical lordosis. (R. 1016).

An MRI of Chuculate's cervical spine completed June 1, 2011 showed spondylitic changes most pronounced at C4/C5 and C5/C6 and reversal of the normal lordotic curvature. (R. 687).

On June 21, 2011, Chuculate presented to the emergency room at W. W. Hastings Hospital with right lower quadrant pain, and he was discharged. (R. 1018-92). An x-ray of Chuculate's chest June 21, 2011 showed congestive heart failure with a questionable infectious process of the left lung periphery. (R. 1018). Chuculate was hospitalized at the Claremore Indian Hospital June 21-28, 2011. (R. 912-98). Discharge diagnoses were sepsis due to group C beta-hemolytic streptococcus; and cellulitis of the left leg. (R. 913).

An echocardiogram completed July 15, 2011 showed normal left ventricular systolic function with an ejection fraction estimated between 55 and 60%; mild to moderate left ventricular hypertrophy; aortic sclerosis with trace aortic regurgitation; mild pulmonic regurgitation; mild mitral regurgitation; and mild tricuspid regurgitation with normal mild pulmonary hypertension. (R. 1095-96).

Agency examining consultant Mohammed Quadeer, M.D., completed a physical examination of Chuculate on January 21, 2010. (R. 515-23). Dr. Quadeer noted Chuculate's height as 5'6" and his weight as 203 lbs. (R. 516). On examination, Chuculate's lumbar spine had localized tenderness at L4/L5 with muscle spasm bilaterally at the paravertebral level. (R. 517). He had reduced range of motion of the lumbar spine. *Id.* Dr. Quadeer noted that Chuculate appeared to have depression and anxiety. *Id.* Chuculate's gait was normal. *Id.* Dr. Quadeer's assessments were chest pain; back problems; anxiety and depression; diabetes; and hypertension. (R. 517-18, 521, 523). Dr. Quadeer noted that Chuculate had not received a thorough evaluation of his back in some time. (R. 518).

Nonexamining agency consultant Carmen Bird, M.D., completed a Physical Residual Functional Capacity Assessment on April 15, 2010. (R. 539-46). Dr. Bird indicated that Chuculate could perform a range of work at the "light" exertional level. (R. 540). She noted Chuculate's history of treatment for his coronary artery disease, including his bypass surgery. *Id.* She summarized Dr. Quadeer's examination report. (R. 540-41). Dr. Bird found no postural manipulative, visual, communicative, or environmental limitations. (R. 541-43).

Agency nonexamining consultant Don B. Johnson, Ph.D., completed a Psychiatric Review Technique form dated March 16, 2010. (R. 525-38). In the Psychiatric Review Technique form, for Listing 12.04, Dr. Johnson noted Chuculate's depression. (R. 528). For

7

Listing 12.06, he noted anxiety. (R. 530). For the "Paragraph B Criteria,"[1] Dr. Johnson indicated that Chuculate had no restriction of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. 535). In the "Consultant's Notes" portion of the form, Dr. Johnson stated that Chuculate alleged depression but did not report any medications for a mental health condition. (R. 537). He noted that Chuculate had not reported any problems with activities of daily living that might indicate mental health problems. *Id.* Dr. Johnson said that Chuculate's depression appeared to be nonsevere. *Id.*

## Procedural History

Chuculate filed his application for disability insurance benefits on October 21, 2009. (R. 115-16). He asserted onset of disability as of June 9, 2009. (R. 115). The application was denied initially and on reconsideration. (R. 64-68, 77-79). An administrative hearing was held before ALJ Edmund C. Werre on September 27, 2011. (R. 28-61). By decision dated November 9, 2011, the ALJ found that Chuculate was not disabled. (R. 16-23). On June 18, 2013, the Appeals Council denied review. (R. 1-6). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

---

[1] There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") § 12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

## Social Security Law and Standard Of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[2] *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Wall*, 561 F.3d at 1052 (quotations and citations omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

### Decision of the Administrative Law Judge

In his decision, the ALJ found that Chuculate met insured status requirements through June 30, 2013. (R. 18). At Step One, the ALJ found that Chuculate had not engaged in any substantial gainful activity since his alleged onset date of January 9, 2009. *Id.* At Step Two, the ALJ found that Chuculate had severe impairments of coronary artery disease; hypertension; diabetes; osteoporosis; obesity; scoliosis; COPD; and tobacco abuse disorder. *Id.* He found that Chuculate's depression and anxiety were nonsevere. *Id.* At Step Three, the ALJ found that Chuculate's impairments did not meet any Listing. (R. 19).

The ALJ found that Chuculate had the RFC to perform work at the light exertional level, with environmental limitations of no exposure to temperature or humidity extremes and no exposure to irritants such as gases or chemicals. *Id.* At Step Four, the ALJ determined that Chuculate could not return to past relevant work. (R. 21). At Step Five, the ALJ found that there were a significant number of jobs in the national economy that Chuculate could perform, taking into account his age, education, work experience, and RFC. (R. 22). Therefore, the ALJ found that Chuculate was not disabled from January 9, 2009 through the date of his decision. *Id.*

**Review**

Chuculate asserts errors by the ALJ in addressing Chuculate's obesity, in his RFC determination, and in his credibility assessment. Plaintiff's Opening Brief, Dkt. #14, p. 3. The Court agrees that the ALJ's credibility assessment was not in compliance with legal requirements. For this reason, the decision is **REVERSED AND REMANDED**.

Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002). In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186. "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In his decision, the ALJ included a boilerplate provision that Chuculate's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 21). Boilerplate language is "problematic only when it appears 'in the absence of a more thorough analysis.'" *Keyes-Zachary,* 695 F.3d at 1170. Here, the only possibility of "more thorough analysis" was the ALJ's next paragraph:

> Two echocardiograms since his alleged onset have shown Mr. Chuculate's cardiac function to be normal. His ejection fractions have remained in acceptable ranges. His back has retained the full range of motion. Mr. Chuculate testified at his hearing that he has had asthma all his life. Yet, in speaking with Dr. Quadeer, he denied having asthma, shortness of breath, or COPD. The claimant testified he

11

> tired quickly while walking. However, in a function report, his wife wrote that he
> traveled by walking or driving or riding in a car. Her estimate for his walking limit
> before resting was three blocks. Sherri Chuculate also wrote that the claimant went
> shopping for groceries and other items. Ms. Chuculate credited him with the
> ability to mow the lawn, wash dishes and vacuum (5F). Mr. Chuculate mostly
> confirmed his wife's statements in his own function report. However, he put his
> walking before resting limit at 5-6 blocks (4E). Both the claimant and his wife
> stated he needed 30 minutes to rest after walking a few blocks. In light of the
> evidence of his sound cardiovascular function, minimal degenerative change of the
> spine, single hospitalization for breathing problems, and the two years since he last
> used an inhaler, the alleged need for a 30-minute rest period seems implausible.
> Mr. Chuculate's overall physical condition seems adequate for most activities of
> daily living, including walking short distances without respiratory exacerbation.

(R. 21). The undersigned finds that this paragraph is insufficient as a credibility assessment.

The first sentences of the quoted credibility paragraph focused on Chuculate's heart function, but his testimony was that his heart was doing "pretty much okay" apart from pain jolts. (R. 42). Thus, given that Chuculate's testimony was consistent with the objective reports regarding his heart function, it is not clear to the undersigned how that objective evidence undermined his credibility. The ALJ was required to affirmatively explain how this objective evidence led to his adverse credibility finding. *See Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (in the absence of required specific findings, court is left to guess what evidence undermines testimony); *Keyes-Zachary,* 695 F.3d at 1172 (affirmative linking of specific reasons with substantial evidence is one of the requirements of a credibility assessment).

The next sentence stated that Chuculate retained full range of motion of his back. (R. 21). The ALJ did not give any citation to the record to support this statement, again failing the requirement of affirmative linking with substantial evidence. *Keyes-Zachary,* 695 F.3d at 1172. Further, this statement is contradicted by the report of Dr. Quadeer, the agency examining consultant, which stated that "movements of the lumbar spine are decreased." (R. 517). Given

the contrary evidence from Dr. Quadeer's report, the ALJ's statement is not supported by substantial evidence and therefore does not support his adverse credibility finding.

The next part of the quoted paragraph addressed Chuculate's breathing problems. (R. 21). The ALJ said that Chuculate had testified that he had a long history of asthma, but that Dr. Quadeer's report stated that Chuculate had denied asthma, shortness of breath, or COPD. *Id.* The undersigned finds that this inconsistency is not significant enough to support the ALJ's adverse credibility finding. *See Hamlin*, 365 F.3d at 1221 (discrepancies cited by ALJ were "minor at best and cannot serve to support a lack of credibility finding"); *Valdez v. Barnhart*, 62 Fed. Appx. 838, 842 (10th Cir. 2003) (unpublished) ("minor inconsistencies" did not support ALJ's assertion that claimant exaggerated his symptoms).

Next in the quoted paragraph, the ALJ wrote several sentences focusing on Chuculate's ability to walk, saying he testified he would tire quickly while walking, his wife said he could walk and that he could walk three blocks before resting, and Chuculate said in a function report that he could walk five or six blocks before resting. (R. 21). Any inconsistencies in these statements are minor and not significant enough to support an adverse credibility assessment. *See Hamlin*, 365 F.3d at 1221; *Valdez*, 62 Fed. Appx. at 842.

The ALJ then noted that both Chuculate and his wife had said that he would need to rest for 30 minutes after walking a few blocks. The ALJ said that this seemed "implausible," citing Chuculate's good cardiac function, "minimal" degenerative changes of the spine, single hospitalization for breathing problems, and the passing of two years since using an inhaler. *Id.* This sentence emphasizes evidence supporting a finding of nondisability in a selective and misleading fashion. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (ALJ must discuss more than just the evidence favorable to an opinion that a claimant is not disabled); *Sitsler*

13

*v. Astrue*, 410 Fed. Appx. 112, 117-18 (10th Cir. 2011) (unpublished) (ALJ's findings regarding claimant's activities of daily living were selective and misleading). For example, at least one objective imaging report described "severe degenerative changes" of Chuculate's cervical spine, and therefore the ALJ's characterization of minimal changes is not completely correct. (R. 1016). Further, the undersigned is not convinced that a "single" hospitalization for breathing problems undermines a claim of needing to rest for 30 minutes after walking, but this statement also is not completely accurate. Upper respiratory infection was the first discharge diagnosis from Chuculate's December 2008 hospitalization, but the discharge summary from Chuculate's hospitalization in May-June 2010 noted exacerbation of COPD and acute bronchitis as secondary diagnoses. (R. 346, 553). The ALJ's reasoning that a need for a 30-minute rest period was "implausible" relies on impermissible picking and choosing from the objective evidence. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (an ALJ is "not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability"); *Schwarz v. Barnhart*, 70 Fed. Appx. 512, 518 (10th Cir. 2003) (unpublished) (ALJ may not pick and choose particular entries to support his ruling, but must consider the record as a whole).

The ALJ's final reason supporting his adverse credibility assessment was based on Chuculate's activities of daily living, and this comes closest to being a legitimate reason closely tied to substantial evidence. (R. 21). While minimal activities of daily living alone do not constitute substantial evidence that a claimant does not suffer disabling pain, an ALJ may consider them as part of his evaluation of the claimant's credibility. *Zaricor-Ritchie v. Astrue*, 452 Fed. Appx. 817, 822-23 (10th Cir. 2011) (unpublished). The activities cited by the ALJ in this paragraph were driving or riding in a car, shopping, mowing the lawn, washing dishes, and

14

vacuuming. (R. 21). The other flaws in the ALJ's credibility assessment lead this Court to the conclusion that the ALJ's reliance on these activities of daily living to undermine Chuculate's claim of disability was not sufficient.

In addition to these concerns regarding what the ALJ did say regarding Chuculate's credibility, the ALJ's discussion omitted the required analysis of Chuculate's pain. Our circuit has a familiar three-prong required analysis for claims of pain.

> (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004). In evaluating the third prong of this analysis, an ALJ is required to consider the following factors:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 *3; *Jones v. Colvin*, 514 Fed. Appx. 813, 819-20 (10th Cir. 2013) (unpublished). Here, the ALJ said that he considered SSR 96-7p, and perhaps the introductory

boilerplate paragraph quoted above was intended to state that he found the first two prongs of the three-prong analysis to be satisfied. (R. 19, 21). The ALJ never used the word "pain," however, in the quoted paragraph that appears to be his credibility assessment, and he ignored most of the required factors.

The ALJ discussed the first factor, activities of daily living, but he did not discuss the other factors directly addressing a claim of disabling pain, such as the location and frequency of the pain, aggravating factors, pain medication, treatment received by the claimant, and other measures the claimant has tried to relieve the pain. SSR 96-7p. By ignoring these factors and the related evidence that arguably supported a finding of disability, the ALJ's credibility assessment was impermissibly one-sided. For example, the ALJ never mentioned Dr. Quadeer's finding on examination of tenderness of Chuculate's back at the L4/L5 level with bilateral muscle spasm. (R. 517). In the treating records there were several instances where tenderness on examination was noted. (R. 560, 572, 576, 671, 684). On one of these occasions, marked spasms were also noted, and Chuculate was prescribed muscle relaxers. (R. 671). Prescription pain medications were also referenced in the treating records. The ALJ failed to mention this evidence.

The ALJ's decision here is somewhat similar to the decision reviewed by the court in *Jones*. The court in *Jones* said: "[M]any of the reasons the ALJ gave for discounting [the claimant's] credibility are not well-supported by the record. Moreover, the ALJ failed to discuss a variety of evidence that supported [the claimant's] allegations of pain." *Jones*, 514 Fed. Appx. at 822. The court criticized the ALJ for failing to note that the claimant had been consistent in seeking treatment for her pain and that she had tried many different potential remedies. *Id.* The ALJ also had not discussed the claimant's use of pain medications. *Id.* The court found that this amounted to a failure to discuss significantly probative evidence that supported the claimant's

allegations. *Id.* at 823. The court found that these were not technical omissions but called into question the ALJ's application of the appropriate legal standards. *Id.* at 824.

As was true in *Jones*, many of the reasons given by the ALJ as part of his credibility assessment were legally insufficient or were not supported by the record. Moreover, the ALJ failed to assess Chuculate's claim of pain in accordance with the required factors. The omission calls into question the ALJ's application of the appropriate legal standards. The Court therefore **REVERSES and REMANDS** the ALJ's decision for further consideration.

### Conclusion

The Court takes no position on the merits of Chuculate's disability claim, and "[no] particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Because this case is reversed based on the inadequacy of the ALJ's credibility assessment, the undersigned declines to discuss Chuculate's other asserted appeal issues. On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Chuculate.

Based on the foregoing, the decision of the Commissioner denying disability benefits to Claimant is **REVERSED AND REMANDED.**

Dated this 13th day of February 2015.

Paul J. Cleary
United States Magistrate Judge